# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **STEPHON JAMES** | **CIVIL ACTION** |
| **versus** | **NO. 09-8069** |
| **ROBERT C. TANNER** | **SECTION: "A" (3)** |

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. <u>See</u> 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Stephon James, is a state prisoner incarcerated at the B.B. "Sixty" Rayburn Correctional Center, Angie, Louisiana. Several bills of information were filed against him in the Louisiana Twenty-Second Judicial District Court charging him with the following violations of Louisiana law: issuing worthless checks in case number 343846; issuing worthless checks in case

number 394007; theft in case number 401659; possession of hydrocodone in case number 403893; two counts of distribution of cocaine in case number 404187; possession of cocaine in case number 404573; and theft in case number 406418. On August 17, 2006, he pleaded guilty to all of those charges.[1] On that same date, he was sentenced to the following concurrent terms of imprisonment: five years in case number 343846; one year in case number 394007; six months in parish jail in case number 401659; five years in case number 403893; fifteen years on each count in case number 404187; five years in case number 404573; and five years in case number 406418.[2] On that same date, based on a prior conviction for simple robbery in case number 102286, petitioner also pleaded guilty to being a second offender and was resentenced as such in case number 343846 to a concurrent term of fifteen years imprisonment.[3]

On June 18, 2007, petitioner filed with the state district court an application for post-conviction relief.[4] That application was denied on October 4, 2007.[5] He then filed a writ application

---

[1] State Rec., Vol. I of I, transcript of August 17, 2006, pp. 17-18.

[2] State Rec., Vol. I of I, transcript of August 17, 2006, pp. 23-24.

[3] State Rec., Vol. I of I, transcript of August 17, 2006, pp. 24-27.

[4] State Rec., Vol. I of I. The United States Fifth Circuit Court of Appeals has held that federal *habeas* courts must apply Louisiana's "mailbox rule" when determining the filing date of a state court filing, and therefore such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system." Causey v. Cain, 450 F.3d 601, 607 (5th Cir. 2006). Petitioner mailed his application on June 18, 2007. See State Rec., Vol. I of I, Letter to Court Clerk from petitioner filed July 23, 2007.

[5] State Rec., Vol. I of I, Judgment dated October 4, 2007. Due to the delay in the district court's ruling, petitioner had filed with the Louisiana First Circuit Court of Appeal an application for a writ a mandamus. On November 28, 2007, the Court of Appeal denied that application as moot in light of the district court's October 4 order. State v. James, No. 2007 KW 1844 (La. App. 1st Cir. Nov. 28, 2007) (unpublished); State Rec., Vol. I of I.

with the Louisiana Supreme Court on January 18, 2008.[6]  On November 14, 2008, that application

was transferred to the Louisiana First Circuit Court of Appeal for consideration on the merits.[7]  On

March 6, 2009, the Court of Appeal denied relief.[8]

While those proceedings were ongoing, petitioner filed another post-conviction

application with the state district court on May 14, 2008,[9] which he supplemented on June 3, 2008.[10]

That application was denied on July 3, 2008.[11]  His related writ applications were then also denied

by the Louisiana First Circuit Court of Appeal on December 8, 2008,[12] and by the Louisiana

Supreme Court on November 6, 2009.[13]

---

[6] Supplemental State Rec., Vol. I of I.  Although that application was stamped as filed by the Clerk of Court on February 14, 2008, it was dated and postmarked on January 18, 2008.  State Rec., Vol. I of I.

[7] State *ex rel.* James v. State, 996 So.2d 1081 (La. 2008) (No. 2008-KH-0342); State Rec., Vol. I of I.

[8] State v. James, 2008 KW 2408 (La. App. 1st Cir. Mar. 6, 2009) (unpublished); State Rec., Vol. I of I.

[9] State Rec., Vol. I of I.

[10] State Rec., Vol. I of I.

[11] State Rec. Vol. I of I, Reasons for Judgment dated July 3, 2008.  The Court notes that petitioner also filed with the state district court a "Motion and Order to Vacate and/or Set-Aside Illegal Multiple Offender Sentence and Quash Habitual Offender Bill of Information" on May 31, 2008.  State Rec., Vol. I of I.  However, it is unclear whether the state district court ever expressly ruled on that motion.

[12] State v. James, No. 2008 KW 1679 (La. App. 1st Cir. Dec. 8, 2008) (unpublished); State Rec., Vol. I of I.

[13] State *ex rel.* James v. State, 21 So.3d 304 (La. 2009) (No. 2009-KH-0263); State Rec., Vol. I of I.

In the interim, petitioner also filed with the state district court a "Motion to Set Aside Guilty Pleas and Vacate Illegal Habitual Offender Sentence" on May 20, 2009.[14]  That motion was denied on July 10, 2009.[15]  He then filed with the Louisiana First Circuit Court of Appeal a related writ application which was denied on November 23, 2009.[16]

On December 3, 2009, petitioner filed the instant federal application for *habeas corpus* relief.  In his application, he asserts two claims:

1.    Petitioner's plea in the habitual offender proceedings was involuntary; and

2.    Petitioner received ineffective assistance of counsel in the habitual offender proceedings.

The state argues that the application must be dismissed because it is untimely and because petitioner failed to exhaust his state court remedies.

Timeliness

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") generally requires that a petitioner bring his Section 2254 claims within one (1) year of the date on which his

---

[14]   State Rec., Vol. I of I.

[15]   State Rec., Vol. I of I, Judgment dated July 10, 2009.

[16]   State v. James, 2009 KW 1523 (La. App. 1st Cir. Nov. 23, 2009) (unpublished); State Rec., Vol. I of I.  While those proceedings were ongoing, the Court notes that petitioner filed yet another application for post-conviction relief on June 17, 2009, which was denied on August 31, 2009.  State Rec., Vol. I of I, Judgment dated August 31, 2009.  He also filed a "Motion to Vacate and Set Aside Judgement" on July 24, 2009, which was denied on August 25, 2009.  State Rec., Vol. I of I.

underlying criminal judgment becomes "final." Under the AEDPA, a judgment is considered "final" upon the expiration of time for seeking direct review. 28 U.S.C. § 2244(d)(1)(A).[17]

As noted, on August 17, 2006, petitioner pleaded guilty and was sentenced. Because he did not file a direct appeal within the thirty days allowed by state law, his convictions and sentences became final no later than September 18, 2006.[18] Accordingly, pursuant to 28 U.S.C. § 2244(d)(1)(A), the period that petitioner had to file his application for federal *habeas corpus* relief with respect to his state criminal judgments commenced on that date and expired one year later, unless that deadline was extended through tolling.

The AEDPA provides that the statute of limitations is tolled for the period of time during which a properly filed application for state post-conviction relief or other collateral review attacking a conviction or sentence is pending in state court. 28 U.S.C. § 2244(d)(2). Once such an application is filled, tolling continues uninterrupted for the duration of the related proceedings, so long as the petitioner sought supervisory review in a timely manner. Grillette v. Warden, Winn Correctional Center, 372 F.3d 765, 769-70 (5th Cir. 2004).

In the instant case, after two hundred seventy-two (272) days elapsed, petitioner tolled the federal limitations period on June 18, 2007, by filing a post-conviction application with

---

[17]   Although § 2244(d)(1) has alternative provisions providing for other events which can trigger the commencement of the statute of limitations, the alternative provisions are not applicable in the instant case.

[18]   See State v. Counterman, 475 So.2d 336, 338 (La. 1985) (conviction and sentence are final upon the failure of the defendant to make a timely motion for appeal). Under Louisiana law, a criminal defendant has thirty days to file a motion to appeal his conviction or sentence. La.C.Cr.P. 914. In this case, the thirtieth day of that period fell on a Saturday, and, therefore, had until Monday, September 18, to file an appeal. See La.C.Cr.P. art. 13; La.Rev.Stat.Ann. § 1:55.

the state district court.  When that application was denied on October 4, 2007, petitioner then had

thirty days to seek review by the Louisiana First Circuit Court of Appeal.  See Louisiana Uniform

Rules of the Courts of Appeal Rule 4-3; see also Melancon v. Kaylo, 259 F.3d 401, 404-06 (5th Cir.

2001); Campbell v. Cain, Civ. Action No. 06-3983, 2007 WL 2363149, at *3 & n.24 (E.D. La. Aug.

15, 2007).  However, it does not appear that he properly sought such review in a timely manner.  His

next state court filing, the Louisiana Supreme Court writ application in case number 08-KH-0342,

was apparently filed both late and in the wrong court.  Nevertheless, the Louisiana Supreme Court

did not deny the filing on either of those grounds; rather, the writ was "[g]ranted for the sole purpose

of transferring the application to the Court of Appeal, First Circuit, for its consideration *on the

merits*."[19]  The Court of Appeal thereafter denied relief without assigning reasons, with no indication

that it ignored the Supreme Court's order to consider the application on the merits.  In light of that

fact, this Court is reluctant to find that tolling was interrupted due to any seeming procedural defects

in the manner in which the writ application was filed.[20]  Therefore, out of an abundance of caution,

---

[19] State *ex rel.* James v. State, 996 So.2d 1081 (La. 2008) (No. 2008-KH-0342) (emphasis added).

[20] In Grillette, the United States Fifth Circuit Court of Appeals found that tolling continued uninterrupted in an arguably similar scenario.  The Fifth Circuit held:

> [A]t no point did the state trial court or the Louisiana Court of Appeal fault Grillette for failure to comply with Rule 4-3.  Whereas in Melancon, the Louisiana Court of Appeal expressly indicated that Melancon's application "appeared untimely," in this case it is undisputed that the Louisiana Court of Appeal disposed of Grillette's application "on the merits," without any notation that his application was time-barred.  We acknowledge, as the State asserts, that a state court's consideration of an application "on the merits" is not by itself conclusive proof that the application was timely filed in accordance

this Court finds that the statute of limitations was tolled from June 18, 2007, the date on which the

post-conviction application was filed, until April 6, 2009, when petitioner's period expired for

seeking review of the Court of Appeal's judgment of March 6, 2009. See Grillette, 372 F.3d at 769-

71 (for tolling purposes, "a state application ceases to be pending when the time for appellate review

expires"); Louisiana Supreme Court Rule X, § 5(a) (a litigant has only thirty days to file a writ

application to challenge a judgment of a Louisiana intermediate appellate court).[21]

---

> with that state's timeliness laws and rules and thus "pending." See
> [Carey v.] Saffold, 536 U.S. [214,] 226, 122 S.Ct. 2134 [(2002)]
> (noting different reasons why a court might "address the merits of a
> claim that it believes was presented in an untimely way"). *Rule 4-3,
> however, prohibits the Court of Appeal from considering the merits
> of an application that is not filed with the appellate court within the
> original or extended return date, "in the absence of a showing that
> the delay in filing was not due to the applicant's fault." Because the
> Court of Appeal did consider the merits of Grillette's application, it
> must have determined that the application was timely either because
> the trial court impliedly extended the return date and/or because the
> delay was not due to Grillette's fault.*
>
> Moreover, as Grillette correctly points out, when the denial
> of an application is based on untimeliness, Louisiana courts routinely
> and unmistakably indicate so in their opinions. See, e.g., Carter v.
> Rhea, 785 So.2d 1022, 1022 (La.Ct.App. 4th Cir. 2001) ("WRIT
> APPLICATION DISMISSED AS UNTIMELY."); Lawyer v.
> Succession of Kountz Through Cupit, 703 So.2d 233, 233
> (La.Ct.App. 4th Cir. 1997) ("WRIT NOT CONSIDERED."); Watts
> v. Dorignac, 681 So.2d 955, 955 (La.Ct.App. 1st Cir. 1996) ("WRIT
> NOT CONSIDERED"). *Thus, had the Louisiana Court of Appeal
> decided to reach the merits of the application notwithstanding a
> determination that the application was untimely, it appears that the
> court would have indicated any such untimeliness in its opinion.*

Grillette, 372 F.3d at 775 (emphasis added).

[21]  Because the thirtieth day of the period fell on a Sunday, petitioner had until the following day,
April 6, to file a writ application in the Louisiana Supreme Court. See La.C.Cr.P. art. 13;
La.Rev.Stat.Ann. § 1:55.

Further, the limitations period did not resume running at that point, because petitioner is entitled to additional tolling credit based on his subsequent overlapping filings, i.e. the post-conviction application filed May 14, 2008, and the "Motion to Set Aside Guilty Pleas and Vacate Illegal Habitual Offender Sentence" filed on May 20, 2009. The tolling credit resulting from the latter motion continued through December 23, 2009, when his period expired for seeking review of the Court of Appeal's judgment of November 23, 2009. Of course, before that tolling period even expired, petitioner had already filed his federal application on December 3, 2009.[22] Because only two hundred seventy-two (272) days of the one-year limitation had elapsed prior to that filing, the federal application was timely filed.

Exhaustion

Pursuant to 28 U.S.C. § 2254(b)(1)(A), a petitioner normally must first exhaust his remedies in state court before seeking *habeas corpus* relief from the federal courts. "To exhaust, a petitioner must have fairly presented the substance of his claim to the state courts." Wilder v. Cockrell, 274 F.3d 255, 259 (5th Cir. 2001) (internal quotation marks omitted). Generally, the exhaustion requirement is satisfied when the grounds urged in a federal petition were previously presented to the state's highest court in a procedurally proper manner according to state court rules. Dupuy v. Butler, 837 F.2d 699, 702 (5th Cir. 1988).

---

[22] "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court." Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003). Petitioner signed his federal application on December 3, 2009; therefore, that it the earliest date it could have been submitted to prison officials for mailing.

Accordingly, in order to determine whether petitioner exhausted his state court remedies, the Court must compare the claims asserted in the instant federal application to the claims petitioner presented to the Louisiana Supreme Court. See, e.g., White v. River Correctional Center, Civ. Action No. 09-3242, 2009 WL 2914338 (E.D. La. Aug. 27, 2009). Petitioner's federal application asserts two claims, i.e. that his plea in the habitual offender proceedings was involuntary because he was not advised of his right against self-incrimination and that his counsel was ineffective for failing to ensure that he was expressly advised of that right in the habitual offender proceedings. Those claims were presented to the Louisiana Supreme Court in his writ application in case number 09-KH-263.[23] Accordingly, the claims are arguably exhausted.[24]

---

[23] Supplemental State Rec., Vol. I of I, writ application (No. 09-KH-263).

[24] There is, however, an argument to be made that the claims are not exhausted due to the apparent alteration the claims underwent during the state court proceedings. As presented to the state district court, petitioner's claims appeared to be that he was denied a right to appeal and that his counsel was ineffective in various respects. The claims took on their present form only when presented to the appellate courts. That is generally insufficient, in that the exhaustion requirement is normally met only if the federal claims were presented to "each appropriate state court." Baldwin v. Reese, 541 U.S. 27, 29 (2004); Thomas v. Cain, Civ. Action No. 06-10727, 2009 WL 3427369, at *2-3 (E.D. La. Aug. 31, 2009) (Moore, M.J.), adopted, 2009 WL 3427348 (E.D. La. Oct. 23, 2009) (Vance, J.). Nevertheless, even if petitioner's claims are not technically exhausted, a federal court has the authority to deny *habeas* claims on the merits, regardless of whether petitioner exhausted state court remedies and whether exhaustion is waived by the state. 28 U.S.C. § 2254(b)(2); Jones v. Jones, 163 F.3d 285, 299 (5th Cir. 1998); Woods v. Cain, Civ. Action No. 06-2032, 2008 WL 2067002, at *8 n.8 (E.D. La. May 13, 2008). Because petitioner's claims clearly do not warrant relief, the undersigned recommends that they simply be denied on the merits.

Having determined that the instant application is timely filed and that petitioner arguably exhausted his state court remedies, the Court will now address the merits of petitioner's claims.[25]

## Standards of Review

The AEDPA comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of law, questions of fact, and mixed questions of law and fact. The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002). Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and pure questions of fact are reviewed under § 2254(d)(2). Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000).

---

[25] The Court notes that, in rejecting petitioner's claims, the Louisiana Supreme Court cited La.C.Cr.P. art.930.3, which limits the grounds on which a prisoner may seek post-conviction relief, and State *ex rel.* Melinie v. State, 665 So.2d 1172 (La. 1996), which held that article 930.3 does not allow post-conviction challenges to sentencing errors. State *ex rel.* James v. State, 21 So.3d 304 (La. 2009) (No. 2009-KH-0263); State Rec., Vol. I of I. Therefore, it appears that petitioner's claims are procedurally barred. See, e.g., Hull v. Stalder, No. 99-31199, 2000 WL 1598016 (5th Cir. Sept. 28, 2000); Wallace v. Cain, Civ. Action No. 06-11271, 2009 WL 3367052, at *14 (E.D. La. Oct. 15, 2009); Taylor v. Cain, Civ. Action No. 07-3929, 2008 WL 4186883, at *15-17 (E.D. La. Sept. 10, 2008). However, the state did not raise the procedural bar in its response in this proceeding, and this Court is not obliged to raise such defenses on the state's behalf. See Trest v. Cain, 522 U.S. 87 (1977); Prieto v. Quarterman, 456 F.3d 511, 518 (5th Cir. 2006); Magouirk v. Phillips, 144 F.3d 348, 359-60 (5th Cir. 1998).

As to questions of law and mixed questions of law and fact, a federal court must defer

to the state court's decision unless it "was contrary to, or involved an unreasonable application of,

clearly established Federal law, as determined by the Supreme Court of the United States."  28

U.S.C. § 2254(d)(1).  Courts have held that the "'contrary to' and 'unreasonable application' clauses

[of § 2254(d)(1)] have independent meaning."  Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals

has explained:

> A state court decision is contrary to clearly established precedent if
> the state court applies a rule that contradicts the governing law set
> forth in the [United States] Supreme Court's cases.  A state-court
> decision will also be contrary to clearly established precedent if the
> state court confronts a set of facts that are materially
> indistinguishable from a decision of the [United States] Supreme
> Court and nevertheless arrives at a result different from [United
> States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets,

and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court

has explained:

> [A] state-court decision can involve an "unreasonable application" of
> this Court's clearly established precedent in two ways.  First, a
> state-court decision involves an unreasonable application of this
> Court's precedent if the state court identifies the correct governing
> legal rule from this Courts cases but unreasonably applies it to the
> facts of the particular state prisoner's case.  Second, a state-court
> decision also involves an unreasonable application of this Court's
> precedent if the state court either unreasonably extends a legal
> principle from our precedent to a new context where it should not
> apply or unreasonably refuses to extend that principle to a new
> context where it should apply.

<u>Williams v. Taylor</u>, 529 U.S. 362, 407 (2000).  The Supreme Court has noted that the focus of this inquiry "is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in <u>Williams</u> that an unreasonable application is different from an incorrect one."  <u>Bell</u>, 535 U.S. at 694.

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); <u>see also</u> 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

Guilty Plea

Petitioner's first claim is that his guilty plea in the habitual offender proceedings was involuntary because he was not advised of his right against self-incrimination during those proceedings.

To the extent that petitioner is contending that the trial judge failed to comply with the requirements of state law regarding advisement of rights, that contention, even if true, does not state a cognizable federal *habeas* claim.  "Errors of state law and procedure ... are not cognizable unless they result in the violation of a federal constitutional right."  <u>Lee v. Whitley</u>, No. 93-03791, 1994 WL 395071, at *3 (5th Cir. June 28, 1994) (holding that judge's purported violation of state

law in failing to inform the petitioner of his right against self-incrimination in the habitual offender proceeding was not cognizable in a federal *habeas corpus* proceeding); see also Payne v. Whitley, No. 94-30101, 1995 WL 84049, at *2 (5th Cir. Feb. 6, 1995); Odom v. Wheat, Civ. Action No. 09-3028, 2009 WL 3199178, at *6 (E.D. La. Sept. 30, 2009).

To the extent that petitioner is contending that there was a federal violation in this respect, that contention is not well-founded. Even in those situations in which an advisement of rights is required, the federal Constitution does not require an express articulation and waiver of rights on the record before a guilty plea may be accepted. Barksdale v. Blackburn, 670 F.2d 22, 25 (1982); Brown v. Jernigan, 622 F.2d 914, 915 (5th Cir. 1980). Moreover, in any event, the United States Fifth Circuit Court of Appeals has held that the jurisprudence mandating such an advisement of rights has "only a limited application to multiple offender proceedings." Joseph v. Butler, 838 F.2d 786, 790 (5th Cir. 1988). Rather than applying a strict Boykin[26] analysis, federal courts in this Circuit consider only whether the "totality of the circumstances" indicate that the plea in the habitual offender proceedings was voluntary and intelligent. Id. at 789-90; see also Alexander v. Whitley, 940 F.2d 946, 947 (5th Cir. 1991); Swift v. Lynn, 870 F.2d 1039, 1041-42 (5th Cir. 1989).

Considering the totality of the circumstances in the instant case, the Court finds meritless any suggestion that petitioner's guilty plea in the habitual offender proceeding was involuntary or unintelligent. As a preliminary matter, the Court is unconvinced by any suggestion that petitioner was unaware his rights. This was not his first criminal proceeding, and, more importantly, he was fully advised of his rights, including the right against self-incrimination, when

---

[26] Boykin v. Alabama, 395 U.S. 238 (1969).

pleading guilty to the substantive offenses.[27]  The habitual offender adjudication here was "closely related, temporally and functionally," to those plea proceedings, and "the same defense counsel, prosecutor, court, and judge were involved in each."  See Buckley v. Butler, 825 F.2d 895, 902 (5th Cir. 1987).  In fact, in the instant case, there was only a *single* proceeding in which petitioner pleaded guilty to the underlying offenses and then immediately thereafter also pleaded guilty to the multiple bill of information.  Moreover, petitioner was represented by counsel, who presumably also complied with his professional obligation to advise petitioner.  And, of course, the guilty plea was entered pursuant to a favorable plea bargain which resulted in petitioner receiving both a relatively lenient fifteen-year sentence as a second offender[28] *and* the dismissal of other pending charges.[29]  If petitioner was in fact a second offender, a fact he does not contest, then he had much to gain and nothing to lose by pleading guilty.  The totality of these circumstances lead this Court to conclude that petitioner's guilty plea, entered with the assistance of counsel, was voluntary and intelligent.  Accordingly, there was no federal violation.

---

[27]  State Rec., Vol. I of I, transcript of August 17, 2006, pp. 13-14.

[28]  Although petitioner was sentenced to fifteen years imprisonment in the habitual offender proceedings, he faced an enhanced sentence of up to twenty years as a second offender.  See La.Rev.Stat.Ann. §§ 14:71(C) ("Whoever commits the crime of issuing worthless checks, when the amount of the check or checks is five hundred dollars or more, shall be imprisoned, with or without hard labor, for not more than ten years, or may be fined not more than three thousand dollars, or both.") and 15:529.1(A)(1)(a) ("If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction ....").

[29]  See State Rec., Vol. I of I, transcript of August 17, 2006, pp. 15 and 27-28.

<u>Ineffective Assistance of Counsel</u>

Petitioner also claims that he received ineffective assistance of counsel. The United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel. A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense. <u>Strickland v. Washington</u>, 466 U.S. 668, 697 (1984). Petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." <u>Jernigan v. Collins</u>, 980 F.2d 292, 296 (5th Cir. 1993); <u>see also</u> <u>Clark v. Johnson</u>, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. <u>Strickland</u>, 466 U.S. at 697.

To prevail on the deficiency prong of the <u>Strickland</u> test, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. <u>See</u> <u>Styron v. Johnson</u>, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." <u>Little v. Johnson</u>, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. <u>See</u> <u>Strickland</u>, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 371 (1993) (quoting <u>Strickland</u>, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. <u>See</u> <u>Crockett v.</u>

McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to satisfy the prejudice prong of an ineffective assistance of counsel claim in a case involving a guilty plea, petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also Joseph v. Butler, 838 F.2d 786, 791 (5th Cir. 1988) (holding that with respect to a claim of ineffective assistance involving a habitual offender plea, "it is [the petitioner's] burden to demonstrate a reasonable probability that, but for counsel's errors, he would not have admitted his prior convictions and would have demanded a trial on the multiple offender charge.").

Because a claim of ineffective assistance of counsel is a mixed question of law and fact, this Court must defer to the state court decision rejecting petitioner's claim unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002). For the following reasons, the Court finds that neither of those conditions is met in the instant case and that, therefore, this federal court should defer to the state court's ruling.

In the instant case, petitioner contends that his counsel was ineffective because he failed to ensure that petitioner was expressly advised by the judge of his right against self-incrimination in the habitual offender proceedings. However, as noted, federal law does not require such an advisement in habitual offender proceedings, and there is no reason to believe that petitioner

was unaware of that right.  Moreover, in any event, petitioner cannot show the necessary prejudice to support his claim.  As noted, to demonstrate prejudice, he must show that there is a reasonable probability that, had he been advised of his right against self-incrimination, he would not have pleaded guilty to the multiple bill of information and would insisted have insisted that the state prove that he was a second offender at a hearing.  Here, petitioner does not even allege, much less establish, that he would not have pleaded guilty.  Further, there is no reason to believe that he would have insisted on a hearing, in that he does not dispute that he was in fact a second offender, there is no reason to believe the state could not easily prove as much at a hearing, and he obtained favorable concessions in exchange for his plea.  In light of all of those considerations, it is apparent that petitioner would not have insisted on a hearing and, therefore, his ineffective assistance claim has no merit.

For all of the foregoing reasons, the Court finds that petitioner has not demonstrated that the state court's decision rejecting his ineffective assistance claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  Accordingly, under the deferential standard mandated by the AEDPA, this Court should likewise deny the claim.

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Stephon James be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after

being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[30]

New Orleans, Louisiana, this eleventh day of May, 2010.


DANIEL E. KNOWLES, III
UNITED STATES MAGISTRATE JUDGE

---

[30] <u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.